IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


GARY A. JANES,                                    CV 03-1460-MA

            Petitioner,                    OPINION AND ORDER

      v.

GUY HALL,

            Respondent.

      FRANCESCA FRECCERO
      Assistant Federal Public Defender
      101 SW Main Street, Suite 1700
      Portland, OR  97204

            Attorney for Petitioner

      HARDY MEYERS
      Attorney General
      YOULEE YIM YOU
      Assistant Attorney General
      Department of Justice
      1162 Court Street NE
      Salem, OR  97301-6313

            Attorneys for Respondent

MARSH, Judge:

Petitioner, an inmate at Two Rivers Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, challenging his 1998 convictions for sexual abuse. For the reasons set forth below, petitioner's amended habeas corpus petition (#32) is denied.

## BACKGROUND

In June, 1998, petitioner was convicted of two counts of Sexual Abuse in the First Degree in Washington County Circuit Court, and sentenced to 150 months imprisonment. Resp. Ex. 101. The victim was the five-year-old daughter of petitioner's then-girlfriend. Petitioner admitted to touching the child's pubic area with his bare hand on two occasions, while bathing her, but he claimed the touching was not for a sexual purpose.

After a day and a half of testimony, the jury returned verdicts of "not guilty" on both counts. However, when polled by the trial judge, only five of the 12 jurors indicated that this was their verdict. The trial judge re-instructed the jury that ten or more jurors had to agree on the verdict for it to be valid. He then asked them to continue deliberating.[1] Trans. of

---

[1] The full text of the judge's supplemental instruction appears in the "state law" analysis, below.

Verdict, Day 4, at 279-280.  The jury returned to the deliberation room at 10:40 a.m.

Outside the presence of the jury, the judge asked counsel if they wanted to be heard.  The Deputy District Attorney requested that the court not receive the invalid verdict forms. Petitioner's trial counsel made no objections or requests.  _Id_. at 280-82.  At 12:14 p.m., the jury returned a second verdict of "guilty" on both counts of sexual abuse.  Petitioner's counsel requested a jury poll, which indicated that "guilty" was the verdict of 10 jurors.  _Id_. at 286.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed without opinion, State v. Janes, 169 Or. App. 652, 10 P.3d 336 (2000), and the Oregon Supreme Court denied review.  331 Or. 692, 26 P.3d 149 (2001).  Petitioner next sought state post-conviction relief.

In his amended petition for post-conviction relief, petitioner alleged ineffective assistance of trial counsel for, among other reasons, failing to move for a mistrial.  Resp. Ex. 108 at 3.  Petitioner argued that the trial judge coerced the jury into resuming deliberation and changing its verdicts to "guilty," in violation of the Due Process Clause.  _Id_. at 2.

The post-conviction relief (PCR) court rejected petitioner's

claims.  In so doing, the PCR court made the following findings

of fact:

> 1.  The jury in this case began deliberations at
> 2:58pm.  The jury returned at 5:18pm on that same date.
> The jury was released for the evening.  The jury
> returned its initial verdict at 10:30am.  The jury
> returned a not guilty verdict.  The jury was polled.
> The jury did not have 10 jurors agreeing on a not
> guilty verdict.
>
> 2.  The court instructed the jury that 10 or more must
> agree on a verdict of guilty or not guilty.  The jury
> returned for further deliberations at 10:40am.  The
> jury returned at 12:14pm.  The jury found the defendant
> guilty.  The jury was polled.  The verdict was 10-2 for
> a finding of guilt.
>
> 3.  The court did not improperly instruct the jury or
> coerce the jury into returning a guilty verdict.
>
> * * * * *
>
> 5.  Trial counsel had no basis to move for a mistrial
> upon return of the jury's initial, improper verdict.
> Trial counsel properly handled this specific issue.

Resp. Ex. 115 at 3-4.  Further, the PCR court reached the

following relevant conclusion of law:

> 1.  Based on the findings of fact set forth above, in
> the underlying criminal proceedings resulting in
> petitioner's conviction, petitioner was not denied the
> right to assistance of counsel, as guaranteed by either
> the United States Constitution and as articulated by
> the United States Supreme Court in *Strickland v.*
> *Washington*, 466 U.S. 668 (1984), or the Constitution of
> the State of Oregon.

Id. at 5.

The Oregon Court of Appeals affirmed without opinion, <u>Janes v. Schiedler</u>, 187 Or. App. 430, 67 P.3d 998 (2003), and the Oregon Supreme Court denied review. 335 Or. 578, 74 P.3d 112 (2003).

In his amended habeas petition to this court, petitioner appears to allege both a Due Process Clause violation and a Sixth Amendment ineffective assistance of counsel claim. First, he contends the jury's "guilty" verdicts were the product of coercion by the trial judge, "in violation of the Due Process Clause and the laws of the State of Oregon." Amended Petition for Writ of Habeas Corpus at 2. Next, he argues that he was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel (1) "failed to take steps to prevent or to object to the trial judge's coercion of the jury," and (2) "failed to make a motion for mistrial under Oregon law when the jury returned with the not guilty verdicts and the poll revealed that seven jurors disagreed with that verdict, or at any other time during or after the jury's deliberations." <u>Id</u>. at 3.

In his brief to this court, however, petitioner states that he "does not argue the Due Process issue as an independent claim in this proceeding because he did not present that independent federal constitutional claim to the Oregon appellate courts." Pet. Mem. at 3. Although petitioner concedes that his due

process claim is procedurally barred, he also correctly contends that before this court can determine whether his trial counsel was ineffective, the underlying allegation of trial error must be examined. Thus, I address the merits of petitioner's allegation of jury coercion only as a predicate to the determination of whether trial counsel was ineffective in failing to object to this alleged trial error.

## **DISCUSSION**

Under 28 U.S.C. § 2254(d), federal habeas corpus relief may not be granted on a claim that was adjudicated on the merits in state court, unless the adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Petitioner contends the PCR trial court's conclusion that his trial counsel was not ineffective was an unreasonable application of "clearly established federal law...because it was based on the erroneous and unreasonable conclusion that the trial court had done nothing improper to which trial counsel should have objected." Pet. Mem. at 31. For this reason petitioner believes he is entitled to relief under 28 U.S.C. § 2254(d)(1).

Petitioner argues he is also entitled to relief under 28 U.S.C. §2254(d)(2) because the PCR court "overlooked and ignored crucial evidence that the trial judge coerced the jury into reaching a verdict."[2]

Under Strickland v. Washington, 466 U.S. 668, 700 (1984), to prevail on a claim of ineffective assistance of counsel, petitioner must show that (1) his counsel's performance was deficient in that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the Sixth Amendment; and (2) the deficient performance prejudiced the defense (i.e. counsel's errors were so serious as to deprive defendant of a fair trial - a trial whose results are reliable). Id. at 690. Failure to make the required showing on either prong defeats the ineffectiveness claim.

Generally, to establish deficient performance under Strickland, a petitioner must demonstrate that counsel's

---

[2] Specifically, petitioner contends the PCR court failed to include the fact that: (1) the trial judge was aware that the jury was divided seven to five in favor of guilt; (2) the trial judge knew the names of the minority jurors and identified them in open court; (3) the jury foreman attempted to explain something to the court but the judge would not let him speak; (4) the judge did not caution the jurors not to change their minds simply to reach a verdict, even though there is an Oregon jury instruction on this topic; and (5) the trial judge admitted on the record that he had never before confronted a situation in which the jury returned a verdict that did not conform to individual jurors' verdicts. Pet. Mem. at 24.

representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. "Tactical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel." Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995). When assessing counsel's performance, this court must make every effort to eliminate the distorting effects of hindsight. Strickland, 466 U.S. at 689.

To establish prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Id. at 694. In the instant proceeding, this prong requires petitioner to demonstrate that had trial counsel objected or moved for a mistrial, there is a reasonable probability that the trial court would have granted the objection/motion as meritorious. Boyde v. Brown, 404 F.3d 1159, 1173 (9th Cir. 2005); Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).

I.  **Motion for Mistrial**

At the outset, petitioner concedes that if "there is no jury coercion, trial counsel cannot be deemed ineffective for failing to object to the trial court's instruction or for failing to move for a mistrial." Pet. Mem. at 31. Petitioner does not reference specific cases addressing the merits of a motion for mistrial in response to a jury's invalid verdict, before the trial court

issues a supplemental instruction.  Instead, petitioner's
arguments center around whether the jury was coerced by the trial
court's supplemental instruction.  That argument appropriately
addresses the question of whether an objection to the trial
court's supplemental instruction would have been meritorious, but
does not support his claim that counsel was deficient in failing
to move for a mistrial at the moment the poll revealed the
invalid verdict.

With regard to the latter, I find unpersuasive petitioner's
contention that "[i]t cannot plausibly be argued that a competent
attorney would choose to forgo a motion for mistrial as part of a
strategy to obtain one."  Pet. Mem. at 33.  Trial counsel
explained by way of affidavit that he chose not to move for a
mistrial because he thought there was a good chance the jury
would return "not guilty" verdicts or would be hung.  Resp. Ex.
112.  He wrote, "Much information had come out in trial that was
damaging [to petitioner] and I would have welcomed a hung jury
and a retrial."  Id.  Having carefully reviewed the trial
transcript I find this explanation to be reasonable.

In sum, petitioner has failed to demonstrate that trial
counsel's trial strategy was unreasonable, or that he suffered
prejudice as a result of counsel's failure to move for mistrial
after the jury was polled.  Accordingly, the PCR court's
conclusion that trial counsel did not render ineffective

assistance of counsel in this respect is neither contrary to, or
an unreasonable application of clearly established federal law.

## II. Objection to Supplemental Instruction

### A. State Law

There is no dispute that the inquiry into whether trial
counsel was constitutionally deficient in failing to object to
the trial court's supplemental instruction under Oregon law, is
guided by <u>State v. Marsh</u>, 260 Or. 416, 420, 490 P.2d 491 (1971),
and <u>State v. Hutchison</u>, 142 Or. App. 56, 58, 920 P.2d 1105
(1996). Petitioner argues his case is akin to <u>Hutchison</u>, and
distinguishable from <u>Marsh</u>, while respondent contends neither
case is dispositive.

In <u>Marsh</u>, the jury sent a note to the court after
deliberating for three hours. The note read: "Our discussion is
six guilty, six not guilty." 260 Or. at 420. The trial judge
then issued a supplemental instruction, in part stating:

> It is my duty to urge you to reach a decision in this case.
> This case has to be tried either now or later. It is
> unlikely that this case will ever be tried by any jury more
> competent and more representative of the community than
> yourselves. It is unlikely that the evidence would be any
> different before any later trial than it was before this one
> and so it is important that the matter be resolved. Those
> of you who stand on one side of the question should give
> respectful attention and consideration to the views of those
> opposed. And vice-versa.
>
> None of this should be construed by you as suggesting that I
> believe that you should not vote any other way than your own
> conscience based upon the evidence and the instructions in
> this case. None of us expect you to do anything other than

that. But I am sure that you realize along with me that
this case should be decided. It ought not to be decided
unless it is decided by the appropriate number ten to two
and it ought not to be decided unless those ten of you who
concur, if you do, each reach your decision honestly base
[sic] upon the evidence and the law and your own view of the
matter; so nothing I say should be taken as meaning that I
want any of you to vote other than what your own good
judgment dictates. But for the reasons I have mentioned I
urge you to go back and to deliberate further and see if you
can reach a verdict.

Id. at 420-21.

Approximately two hours later, the trial court sent a note

to the jury stating, "Without indicating how your vote stands as

to guilty or not guilty, please indicate how many are on one side

and how many on the other." Id. at 421. The jury responded that

nine were on one side and three on the other. The court then

sent another note asking if there was a reasonable chance the

jury would arrive at a verdict in the next half-hour. The jury

responded with a question, "If there is no resistence for a time

and then just before penetration there is resistence, does it

still constitute rape?" Id. The trial court proceeded to give

the jury an additional instruction on rape, and stated:

Further, I will repeat to you what I told you earlier this
evening at about 9:00 o'clock. What we ask of you is the
honest, conscientious individual vote of each one of you for
any given verdict. We ask each of you on one side to
carefully consider the discussions, points of view, of those
on the other side. And we point out to you that this case
ought to be decided. If it is tried again in all likelihood
the jury will be no better equipped than yourself [sic], the
jury will be similarly selected as you were in all
likelihood, the evidence will be the same. And therefore,
it is incumbent upon you to reach a verdict. Bearing in

mind, however, that we do not expect any of you to vote one
way or the other except according to your own conscience
based upon the evidence and upon these instructions.  I will
now ask you to retire to deliberate further.

Id. at 422-23.  Less than 20 minutes later the jury returned a

"guilty" verdict.   Id.

     The Oregon Supreme Court found that the supplemental

instruction in Marsh did not violate defendant's constitutional

rights because (1) it omitted reference to members of a minority

or majority of the jury, but urged jurors to give "respectful

attention and consideration" to each other's views; (2) it

emphasized the need for "the honest, conscientious, individual

vote of each [juror] for any given verdict"; (3) there was no

minority to be coerced because the jury's note indicated it stood

"six guilty, six not guilty";[3] and (4) the time it took for the

jury to reach a verdict after the last instruction was read,

though but a few minutes, did not signal coercion because the

jury's request for a supplemental instruction indicated it had

been actively deliberating.   Id. at 435-40.

     Conversely, in Hutchison, the jury sent the court a note

after deliberating for almost 3 hours, indicating it was divided

eight to four "with little likelihood of moving 2 more to find

_____

     [3] Because of this fact, the court indicated that it did "not
consider that the relative weight of the evidence is a
substantial factor in this case in determining whether any of
defendant's constitutional rights were violated by that
instruction."  Marsh, 260 Or. 437-38.

guilty," and asking, "At what point will we be declared a hung jury?" Before giving the jury a supplemental instruction, the trial court mis-read the jury's note into the record, as stating that the jury stood "eight to four with likelihood of moving two more to find guilty," rather than "with little likelihood." 142 Or. App. at 60. The trial court then stated:

> I'm going to ask you to deliberate a while longer. At the time you wrote the note, and of course it's now 45 minutes later, but at the time you had deliberated a total of about three hours and 45 minutes. Considering the seriousness of the case and the length of time that it took to present it I don't think that's an extremely long time.

Id. The trial court then read to the jury the ABA instruction approved by the Oregon Supreme Court in Marsh, which provides:

> It is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide the merits of the case for yourself, but do so only after an initial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, or to change your opinion, if you are convinced that it is erroneous. But do not surrender your own honest belief as to the weight of the evidence solely because of the opinion of your fellow jurors or merely for the purpose of returning a verdict.

142 Or. App. at 58; Marsh, 260 Or. at 434. Less than 15 minutes after resuming deliberations the jury returned a guilty verdict. Hutchison, 142 Or. App. at 58.

The Oregon Court of Appeals found the instruction in Hutchison was coercive. Id. at 59. The instruction was neutral on its face, according to the court, because it did not refer to

a majority or minority position. However, when viewed in the factual context in which is was given, the <u>Hutchison</u> court found the instruction's neutrality compromised. In this regard, the court noted the following facts: (1) the jury was not evenly divided before the supplemental instruction was read- the vote was eight to four; (2) not only was the judge aware that the majority was leaning toward conviction, he also misread the jury's note, which "might well have strengthened any impression by the jury that the court was implicitly encouraging a vote for conviction;" (3) the jury only deliberated for 15 more minutes after the supplemental instruction was read. <u>Id</u>. at 61.

Both parties have tried, to little avail, to compare the facts of the instant case to <u>Marsh</u> and <u>Hutchison</u>. Petitioner attempts to cast a shadow of impropriety over the trial judge's poll of the jury, as though it were surreptitiously employed to intimidate. <u>See</u> Pet. Mem. at 21. He argues the trial judge did precisely what the Oregon Supreme Court in <u>Marsh</u> said not to do- he "told the jury that it must continue to deliberate until it reached a verdict." <u>Id</u>. Plus, he "cut off" the presiding juror mid-sentence, "clearly communicating that he, the judge, was interested only in having the jurors reach a verdict based on the votes of ten jurors, not in their manner of deliberation." <u>Id</u>. This move, argues petitioner, was just like the trial judge misreading the jury's note in <u>Hutchison</u>.

Respondent, on the other hand, attempts to distinguish both Marsh and Hutchison from the case at bar. The trial judge's discovery of the jury's divide was inadvertent, argues respondent, gleamed from a routine jury poll, not an overt act of intimidation. Resp. Mem. at 17-18. Furthermore, respondent emphasizes that the judge did not admonish the jury to reach a verdict, but told them to "continue your deliberations" and "spend some more time on this" and "keep us posted on your deliberations," and there was no minority to be coerced, anyway. Id.

The inadequacy of both parties' arguments is due to the fact that neither Marsh nor Hutchison deals with an analogous set of circumstances. They both address supplemental instructions to a deadlocked jury, whereas in petitioner's case we are confronted with a clarifying instruction to a confused jury.

Moreover, unlike in Marsh and Hutchison, here not even the appearance of impropriety surrounds the trial court's awareness of the juror's votes at the time the clarifying instruction was given. Unlike in Hutchison, the trial court here was not wrong to prevent the jury foreman from commenting about details of the deliberative process given that he believed further deliberation would arrive at a proper verdict.

Moreover, it is unclear whether there was a minority of jurors subject to coercion. Petitioner argues three jurors must

have changed their votes from not guilty to guilty in order to reach the final guilty verdict because the final vote was 10-2. Respondent contends there was no minority because "jurors were split 7 to 5 for acquittal." Resp. Mem. at 17. While only five out of 12 jurors agreed that "not guilty" *was* their verdict (Trans. of Verdict at 278-80), the other seven indicated only that "not guilty" *was not* their verdict, not whether they were undecided or voted "guilty." I decline to speculate whether three jurors from the "not guilty" camp changed their votes, or whether the five "not guilty" jurors constituted a minority, as the parties urge. Instead, I find the division of the jurors is not a relevant factor to the determination of whether the clarifying instruction was coercive.[4]

What remains of the "facts" relevant to the inquiry under <u>Marsh</u> and <u>Hutchison</u>, are: (1) the words of the instruction, and (2) the time spent deliberating afterward. As the Oregon Court of Appeals restated in <u>Hutchison</u>, Oregon trial judges possess the discretion to issue a supplemental instruction to a deadlocked jury. <u>Hutchison</u>, 142 Or. App. at 59. Thus, the trial judge's decision to issue a clarifying instruction was not *per se* coercive.

---

[4]Notably, the clarifying instruction, while it didn't caution jurors to maintain conscientiously held views when considering other's points of view, it did not single out a minority, as in <u>Hutchison</u>.

The trial judge said to the jury:

Let me explain something to you.  And I don't mean by going
over this instruction I'm not trying to over emphasis [sic]
this instruction.  You should consider all the instructions
that were given earlier.  But the final instruction that I
gave concerned the verdict form and your verdict, and as I
indicated to you yesterday this is a criminal case and 10 on
[sic] or more jurors must agree on the verdict.  Now, that
would be 10 or more for guilty or 10 or more for not guilty.
And so what I'm going to ask you to do is return to the jury
room at this point and continue on with your deliberations.

We all appreciate the time and effort that you put into this
so far and I think now that you have a clear understanding
of what is required of you you [sic] should spend some more
time on this and then keep us posted as to your
deliberations.

Trans. of Verdict, Day 4, at 279-280.

In <u>Marsh</u>, although disapproving of the trial court's warning

that the case would have to be re-tried if the jury couldn't

reach a verdict, the Oregon Supreme Court found any potential

damage was mitigated by other statements, such as: (1) the case

"ought not to be decided" unless jurors could do so "base(d) upon

the evidence and the law and your own view of the matter..."; and

(2) "we do not expect any of you to vote one way or the other

except according to your own conscience...".  <u>Marsh</u>, 260 Or. at

436.  In the case at bar, the trial judge did not caution the

jurors to remain conscientious, but there was no apparent danger

of jurors pressuring one another, as with deadlocked juries.

Instead he ended by saying "you should spend some more time on

this and keep us posted as to your deliberations."  In other

words, "now that you know you need 10 votes on one side to return a valid verdict, keep up the good work, and let us know how it goes."

Time-wise, the jury in this case spent 90 more minutes (for a total of about approximately 5.5 hours) deliberating before returning guilty verdicts on both counts.  As in <u>Marsh</u>, the considerable amount of time the jury spent afterward weighs strongly against the conclusion of coercion, unlike in <u>Hutchison</u>.

In light of the factual context presented here, where a jury returned an invalid verdict that reflected the vote of only five out of 12 jurors, I find the PCR court was not unreasonable to conclude that the trial judge's instruction was not coercive. Further, I reject petitioner's contention that the PCR court's decision was rendered unreasonable under § 2254(d)(2) due to alleged omissions of fact.  <u>See</u> fn. 4, *supra*.  I find, instead, that the PCR court's findings of fact are sufficient to support its conclusions.

In sum, I find petitioner has not proven that counsel was deficient in failing to object to the trial judge's instruction, or that there is a reasonable probability that, had an objection been made under state law, it would have been granted as meritorious.

**B.    Federal Law**

In addition to an objection based upon state law, petitioner argues that trial counsel was deficient in failing to object to the court's supplemental instruction based upon federal law.  In this regard, petitioner argues that "this court's inquiry into the claim of improper jury pressure under federal law should be guided by the four factors articulated by the Ninth Circuit in its decision in <u>United States v. Wills</u>, 88 F.3d 704 (9th Cir. 1996)."  Pet. Reply at 3; <u>see also</u> Pet. Mem. at 3.

Yet, the Ninth Circuit in <u>Wills</u> relied entirely on its supervisory powers over the district court in reviewing the trial court's instruction for abuse of discretion, and makes no mention of the Due Process Clause or any other constitutional provision. 88 F.3d at 717; <u>see also</u> <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 240 n 3 (1988); <u>Brasfield v. United States</u>, 272 U.S. 448 (1926)(trial court's polling of jury during deliberations was reversible error); <u>Early v. Packer</u>, 537 U.S. 3 (2003)(trial court's comments to deadlocked jury were not coercive); <u>Locks v. Sumner</u>, 703 F.2d 403, 405-07 (9th Cir. 1983).

Respondent correctly identifies this jurisdictional impairment with respect to <u>Brasfield</u> and <u>Wills</u>, and correctly contends that <u>Lowenfield v. Phelps</u> is the controlling case in this matter.  Resp. Mem. at 9.  In <u>Lowenfield</u>, the Supreme Court

considered whether the trial court committed reversible,

constitutional error, when it polled the jury after it sent the

court a note indicating it was unable to reach a sentencing

recommendation, and requesting a re-instruction.  The trial court

polled the jurors in order to determine if further instruction

would be useful.  Eleven jurors indicated that it would, so the

court gave the jurors this instruction:

> Ladies and Gentlemen, as I instructed you earlier if the
> jury is unable to unanimously agree on a recommendation the
> Court shall impose the sentence of Life Imprisonment without
> benefit of Probation, Parole, or Suspension of Sentence.
>
> When you enter the jury room it is your duty to consult with
> one another to consider each other's views and to discuss
> the evidence with the objective of reaching a just verdict
> if you can do so without violence to that individual
> judgment.
>
> Each of you must decide the case for yourself but only after
> discussion and impartial consideration of the case with your
> fellow jurors.  You are not advocates for one side or the
> other.  Do not hesitate to reexamine your own views and to
> change your opinion if you are convinced you are wrong but
> do not surrender your honest belief as to the weight and
> effect of evidence solely because of the opinion of your
> fellow jurors or for the mere purpose of returning a
> verdict.

Id. at 235.  The jury returned a death sentence 30 minutes after

resuming deliberations.

The Lowenfield Court rejected petitioner's reliance on

Jenkins v. United States, 380 U.S. 445 (1965)(per curiam), and

United States v. Gypsum Co., 438 U.S. 422, 459 (1978), and

Brasfield, because those cases were based on the Court's

"supervisory power over the federal courts, and not on constitutional grounds."  484 U.S. at 239-40.

The Court in Lowenfield found the jury was not coerced.  It reasoned that the trial court did not poll the jurors regarding "how they stood on the merits of the verdict, but how they stood on the question of whether further deliberations might assist them in returning a verdict."  Id. at 240.  Although the fact the jury returned with a verdict soon after receiving the supplemental instruction "suggests the possibility of coercion," the Court found no evidence of it in the facts.  It wrote:

> The continuing validity of this Court's observations in Allen are beyond dispute, and they apply with even greater force in a case such as this, where the charge given, in contrast to the so-called "traditional Allen charge," does not speak specifically to the minority of jurors.

Id. at 237-38.

Notably, the Court found significant defendant counsel's lack of objection to the polling or re-instruction, stating, "such an omission indicates that the potential for coercion argued now was not apparent to one on the spot."  Id. at 240.

Two useful comparisons can be made between Lowenfield and the case at bar.  The first is that the clarifying instruction in this case was not directed at a minority of jurors, and as discussed above, neither the judge nor anyone but the jurors themselves knew whether there existed a minority to be coerced.

Second, as in <u>Lowenfield</u>, the inference raised by trial counsel's failure to object to the clarifying instruction is that it did not seem coercive when given. Trial counsel's affidavit provides further support for this conclusion. See Resp. Ex. 112.

In conclusion, I find petitioner has not demonstrated that trial counsel's failure to raise an objection under federal law was objectively unreasonable or that had such an objection been made, there is a reasonable probability that it would have been granted as meritorious. Accordingly, the PCR court's conclusion that trial counsel did not render ineffective assistance of counsel is neither contrary to, or an unreasonable application of, clearly established federal law.

## CONCLUSION

Based on the foregoing, petitioner's amended habeas corpus petition (#32) is DENIED.

IT IS SO ORDERED.

DATED this 25_ day of August, 2005.


_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Court Judge